UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| CHRISTOPHER GLENN BARNES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:16-CV-155 JAR |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Christopher Glenn Barnes's ("Barnes") applications for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, et seq. and supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq.

**I.    Background**

On June 15, 2015, Barnes protectively filed applications for disability insurance benefits and SSI benefits, alleging a disability onset date of March 31, 2015 due to acquired immune deficiency syndrome (AIDS). After his applications were denied at the initial administrative level, Barnes requested a hearing before an administrative law judge ("ALJ"). Following a hearing on March 15, 2015, the ALJ issued a written decision on March 28, 2016, denying his applications. Barnes' request for review by the Appeals Council was denied. Thus, the decision

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Barnes' Statement of Facts (Doc. No. 15-1) and Defendant's Statement of Additional Facts (Doc. No. 20-2). The Court's review of the record shows that the adopted facts are accurate and complete. Specific facts will be discussed as part of the analysis.

## III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;
(2) The education, background, work history, and age of the claimant;
(3) The medical evidence given by the claimant's treating physicians;
(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
(5) The corroboration by third parties of the claimant's physical impairment;
(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The severity of mental disorders is determined by rating the claimant's degree of limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation (the "paragraph B criteria"). § 404.1520a(c)(3). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to

work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001).

Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite [his] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. Id.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove that he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability,

however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

IV. **Decision of the ALJ**

The ALJ determined that Barnes met the insured status requirements of the Social Security Act through September 30, 2017, and had not engaged in substantial gainful employment since March 31, 2015, the alleged onset date of disability (Tr. 21). The ALJ determined that Barnes had the severe impairments of human immunodeficiency virus (HIV) and AIDS (Tr. 21). The ALJ further found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).

After considering the entire record, the ALJ determined that Barnes had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with no additional limitations (Tr. 23-25). The ALJ found Barnes unable to perform any past relevant work; however, based on his age, education, and RFC, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Barnes can perform, citing Social Security Medical-Vocational Rule 201.28, 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("Rule 201.28") (Tr. 25-26). Thus, the ALJ concluded that Barnes had not been under a disability from the amended alleged onset date of March 31, 2015 through the date of his decision, March 28, 2016 (Tr. 26).

V. **Discussion**

In his appeal of the Commissioner's decision, Barnes challenges the ALJ's credibility determination and evaluation of the medical opinion evidence. The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Barnes' credibility was essential to

his determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

**Credibility**

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. Choate v. Barnhart, 457 F.3d 865, 871 (8th Cir. 2006) (citing Wheeler v. Apfel, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Id. (citing Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005).

The ALJ identified a number of reasons for finding Barnes' statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible. In particular, the ALJ noted that since learning of his infection, Barnes has participated in treatment which was helping manage his condition (Tr. 23-24). The medical evidence showed that from June 2015 to

December 2015, when Barnes began a once-daily medication, his "CD4" white blood cell count[2] progressively improved, and as of the most recent blood test in December 2015, was double the count in June 2015 (Tr. 24, 289, 292-93, 297, 308-09, 311). See Lawson v. Colvin, 807 F.3d 962, 965 (8th Cir. 2015) (if a claimant's symptoms is managed by treatment or medication, it is not considered disabling); Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014) (if an impairment can be controlled by treatment or medication, or is amenable to treatment, it does not support a finding of total disability).

Further, Barnes testified he was feeling better than he had prior to receiving his HIV/AID diagnosis – and while he was working. (Tr. 23-24, 40-42). Barnes was infected with HIV in approximately 2011 and continued working. Four years later he tested positive for HIV and AIDS and alleged he became disabled (Tr. 23-24, 40-41, 133, 135, 257). Barnes' more recent testimony makes clear that after the alleged onset date, his impairments were better managed with treatment than in the time preceding the alleged onset date, and thus, suggests that he is not as disabled as he claimed (Tr. 24, 40-41). See Goff v. Barnhart, 421 F.3d 785, 792-93 (8th Cir. 2005) (the absence of evidence showing deterioration in a claimant's condition is a credibility factor in determining whether the condition is disabling).

Although Barnes reported symptoms of pain, weakness, fatigue, mouth lesions, rash, shortness of breath, memory loss and social paranoia (Tr. 47-48, 202-212), the ALJ noted he did not allege any functional limitations resulting from these symptoms in so far as the medical evidence documents (Tr. 24). Moreover, none of Barnes' treating providers opined that he experienced disabling functional limitations because of his symptoms (Id.). Indeed, a county

---

[2] The CD4 count is a snapshot of how well the immune system is functioning. CD4 cells (also known as CD4+ T cells) are white blood cells that fight infection. Usually, the CD4 cell count increases as the HIV virus is controlled with effective HIV treatment. https://www.hiv.va.gov/patient/diagnosis/labs-CD4-count.asp (last visited Sept. 20, 2017).

7

health examiner reported that Barnes's HIV was "doing well" at his two most recent infectious disease consultations (Tr. 289, 302-03).

In assessing credibility, the ALJ also considered that Barnes' reported daily activities, which were not as limited as would be expected given his subjective complaints (Tr. 24). On a typical day, Barnes checks on his mother and daughter who live next door and does housework, including cooking simple meals, cleaning, grocery shopping, and mowing the lawn, although he testified he is unable to completely mow his lawn without stopping to rest (Tr. 44-45, 48-49). Barnes stated that taking out the trash is the most strenuous thing he does in any given day, and that he could lift at most ten pounds (Tr. 48). To be sure, the ability to do activities such as light housework alone is insufficient reason to discredit Barnes' subjective complaints. Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases). However, in this case, the extent of his activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." Chaney v. Colvin, 812 F.3d 672, 677 (8th Cir. 2016); see also Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003) (finding claimant's ability to shop, drive short distances, attend church, and visit relatives was inconsistent with her assertion of disabling pain); Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (finding claimant's ability to "dress and bathe herself," and "do some housework, cooking, and shopping" contradicted her "testimony regarding the severity of her pain and disability").

The ALJ considered Barnes' history of sporadic wages, noting that he frequently worked well below the substantial gainful activity level (Tr. 24). An ALJ may properly consider a claimant's sporadic work history as a factor weighing against his credibility. Bernard, 774 F.3d

at 489. In addition, Barnes' testimony that he was terminated from his past employment because of his personal struggles related to drug addiction problems supported the ALJ's finding that Barnes' unemployment may be for reasons unrelated to his alleged impairments (Tr. 24). See Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004) (claimant's leaving work for reasons unrelated to medical condition detracted from credibility); Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003) (claimant left his job because the job ended; therefore, not unreasonable for the ALJ to find that his suggested impairments were not as severe as he alleged); Brooks v. Colvin, No. 2:14CV108 ACL, 2016 WL 931192, at *5 (E.D. Mo. Mar. 11, 2016) (claimant stopped working because his employer's plant shut down).

In summary, the Court finds the ALJ considered Barnes' subjective complaints on the basis of the entire record and set out numerous inconsistencies that detracted from his credibility. Because the ALJ's determination is supported by good reasons and substantial evidence, the Court defers to his determination. Nicholson v. Berryhill, No. 16-4180, 2017 WL 3568200, at *1 (8th Cir. Aug. 18, 2017) (citing Mabry v. Colvin, 815 F.3d 386, 389 (8th Cir. 2016)).

**Medical opinion evidence**

Next, Barnes argues the ALJ erred in giving "little weight" to the opinion of his treating physician, C. Edward LaValle, III, M.D. when determining his RFC. A treating physician's opinion is generally entitled to substantial weight but does not automatically control. Brown v. Astrue, 611 F.3d 941, 951-52 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009) (internal quotations and citation omitted). "An ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." Id. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good

9

reasons' for the particular weight given to a treating physician's evaluation." Andrews v. Colvin, No. 4:13-cv-1033-NAB, 2014 WL 2968815, at *2 (E.D. Mo. July 1, 2014) (quoting Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000)).

On March 3, 2016, Dr. LaValle completed a Medical Statement regarding HIV and AIDS (Tr. 317-319). He opined that Barnes could work only four hours per day, stand for no more than two hours at a time, occasionally lift twenty pounds, and frequently lift only ten pounds (Tr. 318). In response to questions regarding Barnes's psychiatric limitations, Dr. LaValle checked boxes indicating that Barnes was "moderately impaired" in his ability to understand, remember, and carry out very short and simple instructions; ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration; ability to work with others; the ability to interact appropriately with the general public; ability to accept supervision; and ability to get along with coworkers (Tr. 319). Dr. LaValle left a "Comments" section blank (Id.).

The ALJ gave Dr. LaValle's opinion little weight because his treatment records did not document any subjective reports of the limitations he included in his medical source statement or any objective findings to corroborate them. Further, the limitations were inconsistent with Barnes' reported activities of daily living. (Tr. 25). An ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. Wiley v. Colvin, No. 1:13CV118 SNLJ TIA, 2014 WL 4261113, at *11 (E.D. Mo. Aug. 29, 2014) (citing Goetz v. Barnhart, 182 F. App'x 625, 626 (8th Cir. 2006)). Additionally, the ALJ may properly give little weight to an opinion that consists of "vague, conclusory statements" or is merely a checklist with little to no elaboration. Id. (citation omitted); see also Wildman, 596 F.3d at 964 (finding the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and

provided little to no elaboration). As Dr. LaValle's medical source statement contained limitations far more severe than indicated in the treatment record and failed to include any medical evidence or explanation, the ALJ properly gave his opinion little weight.

In contrast, the ALJ gave "some" weight to the opinion of Judee Gaeta, M.D., a non-examining State agency physician who offered an opinion based on her review of Barnes's medical records (Tr. 25, 57-59, 67-69). In her October 26, 2015 reports, Dr. Gaeta opined that if Barnes continued his medications as prescribed, it was reasonable to believe that by July of 2016 (a year from the time he started treatment), he would be able to do light work. Dr. Gaeta explained that Barnes

> "was diagnosed with HIV/AIDS and has low CD4 and elevated Viral loads, but should continue treatment. His oral candidiasis could not be assumed to be esophageal and he no longer complains of thrush, pain in chest, or odynophagia. He has some weigh[t] loss but not listing level. In addition, although his CD4 counts are less than 200, he has not had bacterial, fungal, protozoan/helminthic, viral infections, or malignant neoplasms related to HIV/AIDS. He does not suffer from HIV encephalopathy, HIV wasting syndrome, Diarrhea, or other repeated manifestations of HIV infection. He does not meet, medically, or functionally equal a listing at this time."

(Tr. 59).

The opinions of non-examining or consultative sources do not normally constitute substantial evidence on the record as a whole. See Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010). However, an ALJ may afford more weight to a non-examining doctor's opinion where the opinion is consistent with the record. Johnson v. Colvin, No. 2:13CV55 DDN, 2014 WL 2804350, at *19 (E.D. Mo. June 20, 2014). Because Dr. Gaeta's assessment was more consistent with the treatment notes indicating that Barnes' symptoms improved and were managed with treatment after the alleged onset date, the ALJ properly gave some weight to her opinion that Barnes retained the capacity to perform a reduced range of light work. However, the

ALJ explained that "[e]vidence developed at the hearing level, including [Barnes's] own hearing testimony, shows the full range of sedentary work is more consistent with his purported symptoms." (Tr. 25).

The ALJ properly formulated the RFC, which included no exertional restrictions beyond those built into the sedentary level, and further properly relied on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, to determine that Barnes was not disabled (Tr. 26). See Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006) (the Guidelines may be used where the nonexertional impairments "do[ ] not diminish or significantly limit the claimant's residual functional capacity to perform the full range of Guideline-listed activities.").

### VI. Conclusion

For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision should be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 25th day of September, 2017.

*/s/ John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**